IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

Noushin Izadifar, M.D.,                    )
                                           )
        Plaintiff,                  )
                                           )
v.                                         )   No.
                                           )
Loyola University, Loyola                  )
University Physicians Foundation,          )
Kim Trevino, R.N., Elaine Adams,           )
M.D., Stephen Slogoff, M.D.,               )
Anthony Barbato, M.D.,                     )
                                           )
        Defendant.                  )

JUDGE SHADUR

No. **03C 2550**

MAGISTRATE JUDGE ASHMAN

**Jury Demand**

APR 1 6 2003

## COMPLAINT

NOW COMES the Plaintiff, Noushin Izadifar, M.D., by her attorneys, John O'Connor and Elizabeth Hubbard of Hubbard & O'Connor, Ltd., and complaining of the Defendants, Loyola University, Loyola University Physicians Foundation, Kim Trevino, R.N., Elaine Adams, M.D., Stephen Slogoff, M.D. and Anthony Barbato, M.D., states as follows:

### JURISDICTION

1.    Count I of this Complaint arises under 28 U.S.C. Sec. 1332 and 42 U.S.C. Sec. 2000 (e) (5) (f) and is brought under Title VII of the Civil Rights Act of 1964, as amended (42 U.S.C. Sec. 2000 (e) 2) to secure protection and to redress deprivation of rights arising thereunder.

2.    Counts II and III are properly before this Court pursuant to its supplemental jurisdiction under 28 U.S.C. Sec. 1367(a) as

1



they arise out of a common set of facts as those alleged in Count I.

3.    All conditions precedent to jurisdiction under 42 U.S.C. Sec. 2000 (e)(5) have occurred or have been complied with for the purposes of the complaint, to wit:

a. EEOC charges were filed on September 27, 2002 and October 22, 2002;

b. this complaint has been filed within 90 days after receipt of notice that the EEOC has completed action on the charges and issued right to sue letters, which right to sue letters were received on April 14, 2003.

## VENUE

4.    The action properly lies in the Northern District of Illinois, Eastern Division, pursuant to 28 U.S.C Sec. 1391 (b), as Defendants Loyola University and Loyola University Physicians Foundation are located in and do business in this District and the events giving rise to the Complaint occurred in this district.    In addition, the other defendants reside in this district.

## THE PARTIES AND FACTS

5.    The Plaintiff, Noushin Izadifar, M.D., (hereinafter "Izadifar" or "Plaintiff") is a female person residing in the United States.

6.    The Defendant, Loyola University (hereinafter "Loyola" or

"Defendant Loyola") is an institution of higher education and is engaged in the practice of medicine and teaching of medicine through the Loyola University Medical Center ("LUMC") and Stricht School of Medicine in Maywood, Illinois. Loyola employs in excess of 500 employees. Loyola University is an employer as defined by Title VII of the Civil Rights Act of 1964.

7.  The Defendant, Loyola University Physicians Foundation (hereinafter "LUPF" or "Defendant LUPF") is a medical practice group employing physicians who have hospital privileges at LUMC. LUPF employee in excess of 500 employees. LUPF is an employer as defined by Title VII of the Civil Rights Act of 1964.

8.  Defendant Kim Trevino, R.N. is a registered nurse employed by Hines VA Hospital in Maywood, Illinois, and held that position during 2002.

9.  Defendant Elaine Adams, M.D. is an employee of Defendant Loyola and Defendant LUPF and is working as chief of medicine at Hines VA Hospital in Maywood, Illinois and LUMC, and held those positions during 2002.

10.  Defendant Stephen Slogoff, M.D. is the Dean of Stritch School of Medicine of Defendant Loyola University, and held that position during 2002.

11.  Defendant Anthony Barbato, M.D. is the President and Chief Executive Officer of Loyola University Health System, Loyola

University and held that position in 2002.

12.    Plaintiff was hired by Loyola and LUPF (collectively referred to as the "Loyola Defendants") in or around April 2000 as an instructor and attending physician and was promoted to clinical assistant professor and attending physician in June 2001.

13.    Throughout her employment with Loyola and LUPF, Plaintiff's performance met and exceeded Loyola's and LUPF's lawful expectations.

14.    During her employment with the Loyola Defendants, Plaintiff was supervised by Bahman Emami, M.D., Professor and Chairman of the Department of Radiation Oncology at the Loyola Defendants.

15.    From the beginning of her employment until mid-February 2002, Emami subjected Plaintiff to harassment, including unwanted touching, requests for a sexual relationship, sexual jokes and innuendo and other forms of harassment.

16.    Emami was motivated to engage in the conduct described in Paragraph 15 by Plaintiff's gender, female, and her national origin, Iranian.

17.    Plaintiff protested Emami's conduct but it continued.

18.    Emami's conduct was unwelcome and created a hostile, offensive and intimidating working environment, interfering with Plaintiff's ability to perform her job.

4

19. On or about February 19, 2002, Plaintiff sent a written letter to Emami reiterating that she did not want a personal relationship with him. On or about February 18, 2002, Plaintiff announced that she was pregnant.

21. From on or about February 19, 2002 until July 2002, Emami's harassment continued in a hostile form. Emami ignored Plaintiff when she needed to communicate with him to perform her job. Emami was falsely critical and hostile to Plaintiff and otherwise interfered with Plaintiff's ability to perform her job.

22. Emami's conduct was unwelcome and created a hostile, offensive and intimidating working environment, interfering with Plaintiff's ability to perform her job.

23. Emami was motivated to engage in the conduct described in Paragraph 21 by Plaintiff's gender, female, her pregnancy and her national origin, Iranian.

24. Plaintiff's job duties included work at LUMC and Hines VA hospital, which shared certain equipment with LUMC.

25. From 2000 to 2002, Plaintiff worked with Defendant Trevino, a nurse at Hines.

26. Trevino developed an animosity towards Plaintiff because of Plaintiff's lack of tolerance for incompetent nursing practices. Trevino repeatedly disobeyed direct orders from Plaintiff and otherwise interfered in Plaintiff's ability to treat patients.

5

27.    On or around April 17, 2002, Trevino intentionally chose not to disinfect an instrument used on two patients and falsely claimed that Plaintiff directed her not to disinfect the instrument.   Specifically, Trevino informed third party medical professionals that Plaintiff would proceed with a procedure "without proper sterilization".   She then suggested that the patients would "get an infection from this unsterile technique".

28.   On or around April 24, 2002, Trevino falsely accused Plaintiff of assaulting and striking her.   Trevino made the false statements to third parties.

29.    Dr. Adams was an indirect supervisor of Trevino and another nurse at Hines VA who had come under criticism from Plaintiff for incompetent work.

30.    Dr. Adams issued a report on or about June 6, 2002, falsely claiming that Plaintiff had committed battery upon Trevino, falsely accusing Plaintiff of a "physical attack" on Trevino, falsely accusing Plaintiff of lying, and falsely accusing Plaintiff of an inability to perform her job as a doctor and putting patients at risk of harm. Dr. Adams published the report to Dr. Emami and other third parties.

31.    In or about May 2002, Emami attempted to discourage Plaintiff from renewing her contracts with the Loyola Defendants. Despite such discouragement, Plaintiff signed her contract renewals

6

in May 2002.

32.   In May 2002, Emami undertook efforts to take away important job duties from Plaintiff and further undermine her career at Loyola.

33.   On or about June 11, 2002, Plaintiff contacted Debra Arendziak in Loyola's administration and on June 12, 2002 Plaintiff contacted Donna Halinski, director of faculty and administrative services, in order to obtain information about filing a formal sexual harassment complaint against Emami.

34.   On or about July 10, 2002, Emami published to Halinski and Slogoff a statement falsely accusing Plaintiff of committing a physical assault and falsely claiming that Plaintiff was unfit to practice medicine.  He further republished false accusations made by Dr. Adams as set forth in Paragraph 30, above.

35.   At the time Emami published and republished the false accusations, he knew the accusations to be false and acted with reckless disregard for the truth.

36.   Emami made the false accusations in order to harm Plaintiff and in order to justify his recommendation that Plaintiff be fired from Loyola University.

37.   On or about July 10, 2002, Emami recommended that Plaintiff be fired from Loyola University.  Emami was motivated to recommend firing Plaintiff in retaliation for her rejecting his

sexual advances and in retaliation for her efforts to report Emami's sexual advances. Emami was further motivated to recommend firing Plaintiff by her gender, pregnancy and her national origin.

38. Emami knew that terminating Plaintiff's employment was not in the interests of Loyola University.

39. On or about July 11, 2002, Dr. Slogoff republished the false accusations against Plaintiff described in Paragraphs 30 and 34, above, to Dr. Barbato. Dr. Slogoff further falsely accused Plaintiff of committing a physical assault and of committing grave misconduct in her performance as a doctor. He published these false accusations to Dr. Barbato, Donna Halinski and Emami.

40. At the time he published the statements described in Paragraph 39, Dr. Slogoff knew the statements to be false and / or acted with reckless disregard for the truth.

41. Dr. Slogoff made the false accusations in order to harm Plaintiff and in order to justify his recommendation that Plaintiff be fired from Loyola University.

42. On or about July 11, 2002, Dr. Slogoff recommended that Plaintiff be fired from Loyola University in order to harm Plaintiff.

43. In recommending the firing of Plaintiff, Dr. Slogoff was not acting in furtherance of Loyola University's interests.

44. On or about July 17, 2002, Dr. Barbato published a letter

8

falsely accusing Plaintiff of grave misconduct in her position as a doctor and physical assault. Dr. Barbato published the false statements to Dr. Slogoff, Leonard Vertuno, M.D. and Michael Vivoda.

45. At the time he published the statements described in Paragraph 44, Dr. Barbato knew the statements to be false and / or acted with reckless disregard for the truth.

46. On July 17, 2002, Plaintiff was fired from her position with Loyola University.

47. On July 19, 2002, Plaintiff was fired from her position with LUPF.

## COUNT I- TITLE VII VIOLATIONS

48. Plaintiff is a female and was, at all times relevant, an employee of Defendant Loyola University and Defendant LUPF protected by Title VII of the Civil Rights Act of 1964, 42 U.S.C. Sec. 2000 (e) et seq. ("Title VII").

49. The Loyola Defendants discriminated against Plaintiff on the basis of her sex in violation of Title VII in that they committed and permitted unwelcome sexual advances, and verbal and physical conduct of a sexual nature to pervade the Plaintiff's workplace and to create a hostile or offensive environment.

50. Plaintiff's gender, pregnancy, national origin, and refusal to engage in a sexual relationship with Emami were

motivating factors in the Loyola Defendants' decisions to terminate her employment, in violation of Title VII.

51. The Loyola Defendants fired Plaintiff in retaliation for her opposition to Emami's sexual harassment, in violation of Title VII.

52. The Loyola Defendants unreasonably failed to prevent and remedy the sexual harassment of Plaintiff.

53. As a result of the Loyola Defendants' unlawful conduct, Plaintiff has suffered and continues to suffer economic and non-economic damages including, but not limited to, lost salary and benefits, lost career opportunity, loss of valuable research product, loss or reputation, pain, suffering, emotional distress, and loss of enjoyment of life.

54. The Loyola Defendants actions were taken with the intent to harm Plaintiff and with reckless disregard for her right to be free of harassment, discrimination and retaliation.

WHEREFORE, Plaintiff respectfully prays that this Court enter judgment in her favor and against Defendant Loyola University and Defendant Loyola Physicians Foundation and award to her all available relief including, but not limited to, reinstatement or front pay, back pay and benefits, compensatory damages, punitive damages, costs and attorney's fees.

## COUNT II - DEFAMATION

55. Defendants Trevino, Adams, Emami, Slogoff, Barbato, and the Loyola Defendants published statements falsely accusing Plaintiff of a physical assault and of grave misconduct in her position as a doctor.

56. Trevino further published false statements accusing Plaintiff of negligence and incompetence in her practice of medicine and of hitting her.

57. Dr. Adams published a false statement accusing Plaintiff of attacking a nurse.

58. At the time each of the Defendants made the false statements described herein, they knew the statements to be false and / or acted with reckless disregard for the truth and acted with malice.

59. The false statements described herein constitute defamation *per se*.

60. As a result of the false statements, Plaintiff suffered loss to her reputation, pain, suffering, emotional distress, and loss of enjoyment of life.

61. As a result of the false statements, Plaintiff was fired from her job and lost salary and benefits.

62. The false statements described herein constitute defamation *per quod*.

WHEREFORE, Plaintiff respectfully prays that this Court enter

11

judgment in her favor and against Defendants Trevino, Adams, Emami, Slogoff, Barbato, and the Loyola Defendants and award to her all available relief including, but not limited to, reinstatement or front pay, back pay and benefits, compensatory damages, punitive damages and costs.

## COUNT III – TORTIOUS INTERFERENCE WITH CONTRACT

63. Defendants Trevino, Adams, Emami, Slogoff, Barbato, and Loyola University published statements falsely accusing Plaintiff of a physical assault and of grave misconduct in her position as a doctor.

64. Trevino further published false statements accusing Plaintiff of negligence and incompetence in her practice of medicine and of hitting her.

65. Dr. Adams published a false statement accusing Plaintiff of attacking a nurse.

66. At the time each of the Defendants made the false statements described herein, they knew the statements to be false and / or acted with reckless disregard for the truth.

67. At the time Trevino, Adams, Emami, Slogoff, Barbato, and Loyola University made the false statements described herein, they knew that Plaintiff was employed under contract with LUPF.

68. Trevino, Adams, Emami, Slogoff, Barbato, and Loyola University made the false statements in order to induce LUPF to

12

breach its contract with Plaintiff and in order to harm Plaintiff.

69. At the time Emami and Slogoff recommended the firing of Plaintiff from Loyola University, they knew that Plaintiff was employed under contract with LUPF.

70. Emami and Slogoff recommended the firing of Plaintiff from Loyola University in order to induce LUPF to breach its contract with Plaintiff and in order to harm Plaintiff.

71. As a result of the actions by Defendants described in Paragraphs 63 through 70, LUPF breached its contract with Plaintiff.

72. As a result of Defendants' conduct aforesaid, Plaintiff has suffered economic and non-economic damages including, but not limited to, lost salary and benefits, lost career opportunity, loss of valuable research product, loss or reputation, pain, suffering, emotional distress, and loss of enjoyment of life.

73. At the time Trevino, Adams, Emami, Slogoff and Barbato made the false statements described herein, they knew that Plaintiff was employed under contract with Loyola University.

74. Trevino, Adams, Emami, Slogoff and Barbato made the false statements in order to induce Loyola University to breach its contract with Plaintiff and in order to harm Plaintiff. Such false statements were not made in furtherance of any interest of Loyola's.

13

75.    At the time Emami and Slogoff recommended the firing of Plaintiff from Loyola University, they knew that Plaintiff was employed under contract with Loyola University.

76.    Emami and Slogoff recommended the firing of Plaintiff from Loyola University in order to induce Loyola University to breach its contract with Plaintiff and in order to harm Plaintiff. Such false statements were not made in furtherance of any interest of Loyola's.

77.    As a result of the actions by Defendants described in Paragraphs 73 through 76, Loyola University breached its contract with Plaintiff.

78.    As a result of Defendants' conduct aforesaid, Plaintiff has suffered economic and non-economic damages including, but not limited to, lost salary and benefits, lost career opportunity, loss of valuable research product, loss or reputation, pain, suffering, emotional distress, and loss of enjoyment of life.

WHEREFORE, Plaintiff respectfully prays that this Court enter judgment in her favor and against Defendants Trevino, Adams, Emami, Slogoff, Barbato, and Loyola University and award to her all

14

available relief including, but not limited to, reinstatement or front pay, back pay and benefits, compensatory damages, punitive damages and costs.

Respectfully submitted,

Noushin Izadifar, Plaintiff,


BY: _____
Attorney for Plaintiff

John O'Connor
Elizabeth Hubbard
Hubbard & O'Connor, Ltd.
900 West Jackson Blvd.
Suite Six West
Chicago, Illinois 60607
(312) 421-5960

15

Civil Cover Sheet

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

COPY

APR 1 6 2003

# Civil Cover Sheet

This automated JS-44 conforms generally to the manual JS-44 approved by the Judicial Conference of the United States in September 1974. The data is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. The information contained herein neither replaces nor supplements the filing and service of pleadings or other papers as required by law. This form is authorized for use only in the Northern District of Illinois.

**Plaintiff(s): Dr. Noushin Izadifar, M.D.**

County of Residence: Cook

Plaintiff's Atty: John O'Connor
Hubbard & O'Connor, Ltd.
900 W. Jackson Blvd, Ste. 6
West
312-421-5960

**Defendant(s):Loyola University, Loyola University Physicians Foundation, Kim Trevino, R.N., Elaine Adams, M.D., Stephen Slogoff, M.D., Anthony Barbato, M.D.**

County of Residence: Cook

Defendant's Atty:

JUDGE SHADUR

# 03C 2550

**II. Basis of Jurisdiction:** 3. Federal Question (U.S. not a party)

MAGISTRATE JUDGE ASHMAN

**III. Citizenship of Principal Parties (Diversity Cases Only)**
Plaintiff:-N/A
Defendant:-N/A

**IV. Origin :** 1. Original Proceeding

**V. Nature of Suit:** 442 Employment

**VI.Cause of Action:** Title VII of the Civil Rights Act of 1964, as amended (42 U.S.C. Sec. 2000 (e) 2).

**VII. Requested in Complaint**
Class Action:No
Dollar Demand:
Jury Demand:Yes

**VIII. This case IS NOT a refiling of a previously dismissed case.**

Signature: John O'Connor

Date: 15 April 2003

03 APR 15 PM 3:19 FILED

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS

EASTERN DIVISION

JUDGE SHADUR

In the Matter of

Dr. Noushin Izadifar, M.D.
Plaintiff,
v.
Loyola University, Loyola University Physicians Foundation, Kim Trevino, RN,
Elain Adams, MD, Stephen Slogoff, MD, Anthony Barbato, MD,
Defendants.

Case Number: 03C 2550

MAGISTRATE JUDGE ASHMAN

APPEARANCES ARE HEREBY FILED BY THE UNDERSIGNED AS ATTORNEY(S) FOR

Dr. Noushin Izadifar, M.D. - Plaintiff.

| (A) | | | | (B) | | | |
|---|---|---|---|---|---|---|---|
| SIGNATURE _John O'Connor_ | | | | SIGNATURE _Elizabeth Hubbard_ | | | |
| NAME John O'Connor | | | | NAME Elizabeth Hubbard | | | |
| FIRM Hubbard & O'Connor, Ltd. | | | | FIRM Hubbard & O'Connor, Ltd. | | | |
| STREET ADDRESS 900 W. Jackson Blvd., Suite 6 West | | | | STREET ADDRESS 900 W. Jackson Blvd., Suite 6 West | | | |
| CITY/STATE/ZIP Chicago, IL 60607 | | | | CITY/STATE/ZIP Chicago, IL 60607 | | | |
| TELEPHONE NUMBER 312-421-5960 | | FAX NUMBER 312-421-5310 | | TELEPHONE NUMBER 312-421-5960 | | FAX NUMBER 312-421-5310 | |
| E-MAIL ADDRESS joconnor@hubbardoconnor.com | | | | E-MAIL ADDRESS ehubbard@hubbardoconnor.com | | | |
| IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) 06205383 | | | | IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) 2544539 | | | |
| MEMBER OF TRIAL BAR? | YES ☑ | NO ☐ | | MEMBER OF TRIAL BAR? | YES ☑ | NO ☐ | |
| TRIAL ATTORNEY? | YES ☑ | NO ☐ | | TRIAL ATTORNEY? | YES ☑ | NO ☐ | |
| | | | | DESIGNATED AS LOCAL COUNSEL? | YES ☐ | NO ☑ | |
| (C) | | | | (D) | | | |
| SIGNATURE | | | | SIGNATURE | | | |
| NAME | | | | NAME | | | |
| FIRM | | | | FIRM | | | |
| STREET ADDRESS | | | | STREET ADDRESS | | | |
| CITY/STATE/ZIP | | | | CITY/STATE/ZIP | | | |
| TELEPHONE NUMBER | | FAX NUMBER | | TELEPHONE NUMBER | | FAX NUMBER | |
| E-MAIL ADDRESS | | | | E-MAIL ADDRESS | | | |
| IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) | | | | IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) | | | |
| MEMBER OF TRIAL BAR? | YES ☐ | NO ☐ | | MEMBER OF TRIAL BAR? | YES ☐ | NO ☐ | |
| TRIAL ATTORNEY? | YES ☐ | NO ☐ | | TRIAL ATTORNEY? | YES ☐ | NO ☐ | |
| DESIGNATED AS LOCAL COUNSEL? | YES ☐ | NO ☐ | | DESIGNATED AS LOCAL COUNSEL? | YES ☐ | NO ☐ | |